501 A.2d 436

**Willie REID a/k/a William Rogers**

**v.**

**STATE of Maryland.**

**No. 7, Sept. Term, 1985.**

Court of Appeals of Maryland.

Dec. 17, 1985.

H. Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, George E. Burns, Jr., Asst. Public Defender, on the brief), Baltimore, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief) Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

RODOWSKY, Judge.

Willie Reid (Reid) was convicted in the Circuit Court for Baltimore City of the murders and robberies of Irvin and Rose Bronstein and of conspiracy to rob. Reid was a principal in the first degree to the murder of Mrs. Bronstein, for which the jury sentenced him to death. On appeal to this Court Reid raised, in addition to the claimed disproportionality of the death sentence in his case, two issues relating to guilt or innocence and fourteen issues relating to the death sentence. In an opinion filed November 8, 1985, we found no merit in Reid's contentions of error at the trial on guilt or innocence. On the basis of the record then before us, we found that at the sentencing hearing the trial judge improperly excluded two character letters offered by Reid, each of which purported to be from an official at the Baltimore City Jail. Consequently, we would have issued a mandate affirming the convictions and sentences, except as

to the death sentence which the mandate would have vacated with a remand for a new sentencing proceeding.

On November 22, 1985, the State filed a Motion for Reconsideration and Stay of Issuance of Mandate, with supporting affidavits from the Warden of the Baltimore City Jail, and from the Administrative Director of therapeutic programs at that facility. The substance of the State's motion and of the affidavits is "that the writers of [the two] letters do not exist, and that the letters are thus bogus." The State requests that we remand this case pursuant to Maryland Rule 871 for an evidentiary hearing on the issue of authenticity "with directions that if the circuit court finds that the letters are authentic, it shall proceed with resentencing, and if the circuit court finds that the letters are not authentic, it shall return the record to this Court for review of Appellant's remaining challenges to his sentence."

As a result of our decision, hereinafter explained, to grant the State's motion we have today directed the Clerk of this Court to withdraw the opinion filed on November 8, 1985. A copy of that opinion is attached hereto for informational purposes and is marked "Appendix A."

We hereby incorporate by reference into this opinion parts I A and I B from Appendix A. For the reasons therein set forth there is no error in the judgments of conviction.

Reid filed a response to the Motion for Reconsideration raising three grounds of opposition: (1) the death penalty statute does not permit a limited remand; (2) objection to the letters on the basis of authenticity was waived; and (3) Rule 871 cannot be used to correct errors committed during the trial itself. For the following reasons we reject Reid's arguments.

(1)

Md. Code (1957, 1982 Repl.Vol.), Art. 27, § 414(f) provides that,

with regard to the death sentence, [this] Court shall:

(i) *Affirm the sentence;*

(ii) Set aside the sentence and remand the case for the conduct of a new sentencing proceeding under § 413; or

(iii) Set aside the sentence and remand for modification of the sentence to imprisonment for life.

These provisions do not apply at this stage of the case. They relate to a mandate which finally adjudicates the merits of a death sentence review. No mandate issued under the opinion attached as Appendix A. We do not reach the merits of the death sentence in this opinion and do not issue any mandate finally adjudicating the merits of the death sentence review. Section 414(f) is not an implied repeal of MD.R. 871.

■ Further, § 414(f) cannot have the effect of precluding a limited remand. *See Harris v. State,* 299 Md. 511, 474 A.2d 890 (1984) (limited remand entered in capital case without vacating death sentence, to determine under former Md.R. 731f.1 whether appellant had been denied effective representation of counsel).

## (2)

■ Because the grounds given by the State at the sentencing hearing for its objection to the letters never raised an issue of authenticity, Reid argues that any authenticity objection has been waived. Of course, by offering the letters, Reid impliedly represented that they were genuine. Indeed, defense trial counsel expressly and on the record represented, presumably innocently, to the State, to the trial court, and thereby to this Court that the character letters were "from individuals who know Mr. Reid." Whatever the extent of the State's waiver might be for purposes of reviewing objections on evidentiary grounds, the waiver does not extend to a waiver of any opportunity to demonstrate that the letters are in fact bogus, if such an opportunity is allowed by this Court under MD.R. 871.

(3)

MD.R. 871 in pertinent part provides:

> If it shall appear to this Court that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment from which the appeal was taken, or that the purposes of justice will be advanced by permitting further proceedings in the cause, either through amendment of the pleadings, introduction of additional evidence, making of additional parties, or otherwise, then this Court, instead of entering a final order affirming, reversing or modifying the judgment from which the appeal was taken, may order the case to be remanded to the appropriate court.

Reid contends that the issue of whether the letters are genuine or bogus cannot be addressed under MD.R. 871 because it is not collateral to the proceedings. Reid refers to *Gill v. State*, 265 Md. 350, 357, 289 A.2d 575, 579 (1972), where we said that MD.R. 871

> may be suitable to correct procedures subsidiary to the criminal trial, [but] it can never be utilized to rectify prejudicial errors committed during the trial itself. The admissibility of a confession is always an integral part of the trial. This is not only true of the confession, per se, but also encompasses the entire process of ascertaining, prima facie, that it was legally obtained. [Footnote omitted.]

In *Gill* a trial judge, sitting nonjury, had admitted a confession without the State's having made a prima facie showing of voluntariness. Under a Rule 1071 remand, which the Court of Special Appeals had ordered, evidence of voluntariness given by the police officers who had custody of Gill when his confession was obtained would, under the Maryland procedure, have to have been re-evaluated in connection with all the evidence of guilt or innocence, even in a bench trial. Consequently the issue on remand was integral and not collateral to the trial.

**16**

*Gill* was distinguished in *Wiener v. State*, 290 Md. 425, 430 A.2d 588 (1981). The question there was whether Wiener's right to the effective assistance of counsel had been prejudiced because an undercover agent for the Attorney General was employed in the office of the District Public Defender who was representing Wiener. We said that "[u]nlike the issue relating to the voluntariness of the confession in *Gill*, evidence given in support of, or in opposition to, Wiener's motion to dismiss is not presented again in the course of the trial for consideration with all of the evidence bearing on guilt or innocence." *Id.* at 438, 430 A.2d at 596. On our remand without affirmance or reversal, for the purpose of conducting a new hearing, we specifically stated the additional evidence "may include evidence directed to demonstrating and negating prejudice arising from [the undercover agent's] receipt of information in Wiener's statement, from defense suggestions made by [the undercover agent], or otherwise." *Id.*

Rule 871 was employed in *Warrick v. State*, 302 Md. 162, 486 A.2d 189 (1985). There we held that the trial court had erred by misconstruing a discovery rule when the court concluded that the State had not violated its obligations under those rules. On remand the trial court was to determine whether the State possessed any information which should have been produced. If that were the fact, the trial court was then to exercise discretion as to the sanction, including "evaluating whether a discovery violation has caused prejudice." *Id.* at 173, 486 A.2d at 194. *See Bailey v. State*, 303 Md. 650, 496 A.2d 665 (1985) (Rule 871 remand to determine, *inter alia*, prejudice, if any, from discovery violation).

With respect to the Rule 871 motion now before us, a remand to determine whether the letters are genuine or bogus will, as in *Wiener, Warrick,* and *Bailey,* determine whether there has been any prejudice. A remand in the instant matter is not for the purpose of giving the State an opportunity to demonstrate that what appeared to be error from the record presented to us for review was not error.

The remand here will determine whether there has been a fraud on the court by presenting bogus letters as evidence. If it is determined that the letters are bogus, there can be no prejudice. Denial of an advantage obtained through working a fraud on the court is not prejudice.

We recognize that the fraud alleged by the State in its motion is "intrinsic" as opposed to "extrinsic" fraud. *See Schwartz v. Merchants Mortgage Co.*, 272 Md. 305, 322 A.2d 544 (1974). Intrinsic fraud, which includes forged documents and perjured testimony, is not a basis for vacating an enrolled decree under "the principle that, once parties have had the opportunity to present before a court a matter for investigation and determination, and once the decision has been rendered *and the litigants, if they so choose, have exhausted every means of reviewing it,* the public policy of this State demands that there be an end to that litigation." *Id.* at 308, 322 A.2d at 546 (emphasis added). Here the mandate has not issued so intrinsic fraud may be considered.

We shall exercise our discretion under MD.R. 871 and grant the requested remand because of the unique facts in this case. Under its motion and supporting affidavits the State proposes to prove not simply that the content of the character letters is mistaken, inaccurate, or untrue but that the purported authors thereof do not exist. The remand will not be a rehashing of credibility issues. Whether the purported authors ever existed and thus, whether a fraud was committed on the court, can be determined objectively and from a review of public records as well as from live witness testimony under the peculiar facts in this case. From the content of the character letters one of the authors is represented to be Matthew Saunders, a captain at the Baltimore City Jail where he had been a correctional officer for eleven years and had been acquainted with Reid for one year preceding June 23, 1984. The other author was represented to be Vance Rosenbaum, Director of Treatment at the therapeutic community at the

Baltimore City Jail known as Eager Village, where Rosenbaum is said to have been employed from at least June of 1983 to June 22, 1984. These representations of objective, historic, and readily determinable facts justify in this case applying the Rule 871 powers.

On remand the circuit court shall conduct an evidentiary hearing to determine whether the two letters are bogus in that their purported authors do not exist. If the court finds that the letters were in fact written by real persons who are the persons described by the content of the letters as the respective authors thereof, then the court should set aside the death sentence and promptly schedule a new sentencing hearing. If, on the other hand, the circuit court concludes that the letters are bogus because the persons described by the content of the letters as the respective authors thereof are not in fact real persons, then we shall review the death sentence as we are required to do by statute. *See* Art. 27, § 414(a); *Harris v. State, supra.*

JUDGMENTS OF CONVICTION AND SENTENCES AFFIRMED, EXCEPT AS TO THE IMPOSITION OF THE DEATH SENTENCE FOR MURDER. MOTION FOR RECONSIDERATION GRANTED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY WITHOUT AFFIRMANCE OR REVERSAL OF THE DEATH SENTENCE FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. MANDATE SHALL ISSUE FORTHWITH.

## APPENDIX A

(Opinion of the Court of Appeals of Maryland in No. 7, September Term, 1985—Willie Reid AKA William Rogers v. State of Maryland, filed November 8, 1985; withdrawn December 17th, 1985)

Appellant, Willie Reid (Reid), was convicted in the Circuit Court for Baltimore City of the murders and robberies of

Irvin and Rose Bronstein and of conspiracy to rob.[1]  Reid was a principal in the first degree to the murder of Mrs. Bronstein, for which the jury sentenced Reid to death.[2]  The cases are before us on appeals and a capital sentence review pursuant to Md. Code (1957, 1982 Repl.Vol.), Art. 27, § 414. We shall remand for a new sentencing proceeding in the capital case and in all other respects we shall affirm.

The bodies of the victims were found on May 20, 1983, in the living room of their home, a bungalow in the Pimlico section of Baltimore City.  Each had been stabbed to death, with twelve stab wounds each.  Mrs. Bronstein's body lay face down on the floor with her hands tied in front of her and with a scarf tied around her head.  Mr. Bronstein's body was sprawled on a couch.  His hands had been bound behind his back with a belt and he was gagged.  There was a hood or cover over his face.  The house had been ransacked.

The jury could have found from the State's proof that the Bronsteins were murdered by Reid and a John Marvin Booth (Booth) late in the afternoon of May 18, 1983.  Booth resided at his mother's home located two houses from the Bronsteins' domicile.  In the evening of May 18 Reid and Booth, with jewelry taken from the Bronsteins, went to the apartment at 400 North Aisquith Street of Veronda Mazyck (Veronda), the woman with whom Reid was then living. After Booth's wife, Jewell, arrived at the apartment, the two couples returned to the Bronstein home to loot it further.  They brought the loot back to Veronda's apartment in the Bronsteins' car.  Part of the loot was fenced or bartered for hard drugs.

---

**1.**  The spelling of appellant's name appears variously in the record as "Reid" or "Reed."  We adopt the spelling used in the five indictments, in appellant's handwritten motions, and in the presentence report.

**2.**  The trial judge imposed consecutive sentences of life imprisonment for the felony murder of Mr. Bronstein and of five years for conspiracy to commit armed robbery.  Convictions for the robberies of both Mr. and Mrs. Bronstein merged into the felony murder convictions.

Veronda's brother, 14-year-old Henry Mazyck (Henry), had been babysitting with her two children at the Aisquith Street apartment on the night of May 18, 1983. The next morning Reid admitted to Henry that Reid had stabbed Mrs. Bronstein while Booth had stabbed Mr. Bronstein.

Reid raises sixteen issues in addition to the claimed disproportionality of the death sentence in his case. We need consider only (I) the alleged trial errors and (II) certain proof offered by Reid but excluded at sentencing.

## I

### A

The State opened its case with the testimony of the Bronsteins' son, who had discovered their bodies, and of the first police officer to arrive at the scene. Each described what he had observed. The next witness was the homicide detective who had been in charge of the investigation. Through him the State introduced a series of photographs presenting various rooms in the Bronstein home, most of which had been ransacked. Reid unsuccessfully objected to photographs of the living room which included the victims' bodies. He argued that the scene had been adequately described orally by the prior witnesses and that the prejudicial effect of the photographs outweighed any assistance which they might give the jury.

The admissibility of photographs is a matter left to the sound discretion of the trial judge and that discretion will not be disturbed unless plainly arbitrary. *Johnson v. State*, 303 Md. 487, 502, 495 A.2d 1, 8 (1985). The photographs objected to in the instant matter are in black and white. They do not focus on the wounds of either victim. While some bloodstains are visible on the clothing of each victim, the photographs are not close-ups of the wounds and do not highlight the bloodstains in any way. Indeed, later in the trial the court excluded autopsy photographs which clearly depicted the wounds. There was no abuse of discretion, particularly in lgiht of the fact that the State was

seeking first-degree murder convictions against Reid on the basis of premeditation as well as on a felony murder theory. The photographs present more clearly than words what the witnesses were attempting to describe concerning the bindings and the covers over the faces of the victims.

## B

■ Appellant also complains of the trial judge's having assisted Henry Mazyck's in-court identification. There was no objection when the witness was testifying on June 12, 1984. The jury began its deliberations on guilt or innocence on Thursday, June 14, and deliberated throughout Friday, June 15. Just before 6 p.m. on that date defense counsel, at the request of Reid, noted the objection now under consideration. The point has not been preserved. MD.R. 885.

■ Further, the point has no merit. We interpret the record to reflect that the witness was looking over the heads of the persons seated at the trial tables and at persons in the spectator area of the courtroom. In order to save time the trial court directed the witness' attention to the persons at the trial tables. There were at least four such persons, two prosecuting attorneys, one defense attorney, and Reid.[3]

---

3. The transcript of this episode is set forth in full below. Reid had from childhood been known as "Sweetsy."

Q. [BY ASST. STATE'S ATTY.] I want you to look around the courtroom and see if you see Sweetsy in the courtroom today?
A. No.
Q. Okay. Do you know someone by the name of Willie Reid?
A. Willie Reid? Ain't that Sweetsy's name?
Q. Look around again. Look at everybody in the courtroom now, and see if you see that person known to you as Willie Reid or Sweetsy. I want you to look at everybody.
A. No.
Q. You don't see him here today either?
A. No.
Q. You are certain about that? Stand up and walk around and see if you see anybody.

■ Further, the error, if any, is harmless beyond a reasonable doubt. This is not a case in which the victim of a crime is called upon to make an identification regarding a person who was seen only when the crime was committed. No one disputed that Henry Mazyck, as a result of visits to his sister's apartment, knew Reid. Indeed, Reid in his direct testimony at the trial on guilt or innocence described Henry's frequenting the Aisquith Street apartment, eating food intended for Veronda's children, and stealing "money and stuff" from Reid if he left it lying about.

## II

At sentencing proceedings before the same jury the State introduced the presentence investigation report which contained Reid's extensive criminal record and to which was appended the victim impact statement. Reid called five witnesses whose testimony was brief. The thrust of their evidence was that they were not aware of Reid's ever having hurt anyone physically. One of these witnesses told of Reid's having run errands for him following the witness' hospitalization. Cross-examination developed that the described events had occurred in 1972.

Reid then offered two letters which the court refused to admit. Each letter was typewritten on the letterhead stationery of the warden of the Baltimore City Jail. They read as follows:

[Defendant's Exhibit No. 1 for
identification at sentencing]

June 23, 1984

---

THE COURT: Look at the people at the trial table there, right where the lawyers are; look at them.

A. Oh!

Q. All right. Now, you said, "Oh!" Did you see someone you recognized, Hank?

A. Yes.

Q. And who did you see?

A. Sweetsy.

[ASST. STATE'S ATTY.]: Let the record reflect he is indicating the defendant, Willie Reid.

Judge James Murphy
Baltimore City Circuit Courts
Calvert and Fayette Streets
Baltimore, Maryland 21202

RE: WILLIE REED

Your Honorable Judge Murphy:

It is with great concern that I write this letter on behalf of Mr. Willie Reed.

I have been a correctional officer at Baltimore City Jail for eleven (11) years. I have known Mr. Reed for the past year as a resident of this facility. In our interaction I have found Mr. Reed to be a well-mannered, well-liked, and responsible individual. He respects the rules, regulations, and authority of the facility. From my professional standpoint, he is easy to work with.

Mr. Reed has also been a resident/member of the Eager Village Therapeutic Community here. He has, according to our records, responded favarably [*sic*] to the program and, in my opinion, has made considerable progress in developing his self-discipline, control, and outlook on life.

Therefore, I find it my duty as well as my honor to write this letter in his behalf. I sincerely hope it will help to save his life, a life that is well deserving of saving.

Thank you. Thank you very much.

Respectfully yours,

/s/ *Matthew Saunders*

Matthew Saunders, Captain
Baltimore City Jail
MS/ke

[Defendant's Exhibit No. 2 for
identification at sentencing]

EAGER VILLAGE THERAPEUTIC COMMUNITY

401 East Eager Street

Baltimore, Md. 21202

June 22, 1984

**24**

Judge James Murphy
Baltimore City Circuit Courts
Calvert and Fayette Streets
Baltimore, Maryland 21202
Honorable Judge Murphy:

We write this letter of deep concern for Mr. Willie Reed, a resident-member of our program here at Baltimore City Jail.

Eager Village Therapeutic Community is based on the psychological concept of behavioral modification. It is, therefore, designed to instill within its resident-members a new value system and socially accepted and improved patterns of behavior.

Our program first admitted Mr. Reed in June of 1983. Since his acceptance he has displayed an obvious interalization [*sic*] of the principles and concepts of Eager Village. He participates fully in group therapy sessions; he is open and honest in individual therapy sessions; and, he is showing a commendable progress in his educational studies.

Moreover, Mr. Reed demonstrates a consistent effort to improve himself and, therefore, improve his relationship with his fellow man. He gets along amiably with both fellow residents and correctional officers alike.

Your Honor, we trust that you will give Mr. Reed all consideration possible under God's merciful heaven, making it possible that this child of the Great Supreme Being may continue to breathe the breath of life.

With deepest appreciation, we thank you in faith and hope.

Sincerely submitted,

/s/ *Vance Rosenbaum*

Vance Rosenbaum
Director of Treatment
Eager Village
VR/lp

The ruling of the trial court was made under the following circumstances.

[DEFENSE COUNSEL]: Your Honor, at this time the defense would move to introduce certain character letters from individuals who know Mr. Reid.

One is from a Matthew Saunders, Captain of Baltimore City Jail; Vance Rosenbaum, also affiliated with the Eager Village Therapeutic Community Group that is set up and organized at the Baltimore City Jail.

[ASSISTANT STATE'S ATTORNEY]: May we approach the bench on that?

THE COURT: Yes

(Counsel and defendant approached the bench and the following ensued:)

[ASSISTANT STATE'S ATTORNEY]: I am looking at the one from Eager House.

[DEFENSE COUNSEL]: Of course, this isn't anything different from anything else, based on hearsay, what that person has learned about the investigation and robbery. I don't see how it's any different.

[ASSISTANT STATE'S ATTORNEY]: There is nothing expressing the inmate. He talks about the program; how he does in there.

THE COURT: The next to the last paragraph, if it wasn't for that—but I don't think I will let that in, where it says, "Your Honor—"

[ASSISTANT STATE'S ATTORNEY]: Next to the last paragraph.

[DEFENSE COUNSEL]: Would your Honor consider accepting that without the last paragraph?

THE COURT: No. I guess you better leave it out. Bring in the witness.

[DEFENSE COUNSEL]: As to the other letter, the Matthew Saunders letter?

[ASSISTANT STATE'S ATTORNEY]: I haven't seen that.

[DEFENSE COUNSEL]: Want to look at that?

(Document handed to [Assistant State's Attorney].)

[ASSISTANT STATE'S ATTORNEY]: The letter is the same thing.

[ASSISTANT STATE'S ATTORNEY]: Again the next to last paragraph.

THE COURT: I agree.

[DEFENSE COUNSEL]: I want that marked. I'd like to bring him in.

[ASSISTANT STATE'S ATTORNEY]: I'd like the record to reflect, we won't finish today if he brings in the other witnesses.

THE COURT: Why don't you bring him in.

[DEFENSE COUNSEL]: Ms. Budd has gone away.

THE COURT: How long are we supposed to wait for her? Do you have any other ones?

[DEFENSE COUNSEL]: No.

THE COURT: She will have to testify tomorrow then.

The above proceedings occurred on Monday, July 23. Following that colloquy, Reid exercised his right of allocution to the jury and the court adjourned at 2:45 p.m. The court directed counsel to be in chambers at 9:30 the next morning. The record for Tuesday, July 24, begins with proceedings in open court at 11:35 a.m. No testimony was taken. There is no explanation why the authors of the two letters, or the Ms. Budd referred to the preceding day, were not called as witnesses. There was no defense request for a postponement. So far as the record reveals nothing occurred between open court sessions which would bear materially on the ruling under consideration.

Md. Code (1957, 1982 Repl.Vol., 1985 Cum.Supp.), Art. 27, § 413(c)(1) sets forth the ground rules for the admission of evidence in capital sentencing proceedings. The statute reads:

(c) *Evidence; argument; instructions.—*

(1) The following type of evidence is admissible in this proceeding:

(i) Evidence relating to any mitigating circumstance listed in subsection (g) of this section;

(ii) Evidence relating to any aggravating circumstance listed in subsection (d) of this section of which the State had notified the defendant pursuant to § 412(b) of this article;

(iii) Evidence of any prior criminal convictions, pleas of guilty or nolo contendere, or the absence of such prior convictions or pleas, to the same extent admissible in other sentencing procedures;

(iv) Any presentence investigation report. However, any recommendation as to sentence contained in the report is not admissible; and

(v) Any other evidence that the court deems of probative value and relevant to sentence, provided the defendant is accorded a fair opportunity to rebut any statements.

The proffered letters are relevant. They are relevant to the mitigating factor set forth in § 413(g)(7): "It is unlikely that the defendant will engage in further criminal activity that would constitute a continuing threat to society." The State does not argue that the content of the letters is not relevant.

Nor were the letters inadmissible as hearsay. The reference to "evidence" in § 413(c) does not establish a requirement that the strict rules of evidence are to be followed in the sentencing phase of a capital case. Section 413(c)(1)(v), by permitting the reception of "[a]ny other evidence that the court deems of probative value and relevant to sentence," recognizes that the "evidence" which may be received at sentencing need not comply with the rules of evidence applicable at the guilt or innocence phase. All proof which meets the rules of evidence is probative. There would be no need to specify in § 413(c)(1)(v) that "evidence" at sentencing be deemed by the court to be of probative

value unless the reception of proof outside of the rules of evidence were contemplated. Section 413(c) generally follows the law respecting receipt by a sentencing judge of information relevant to the sentence. *See Logan v. State,* 289 Md. 460, 481, 425 A.2d 632, 643 (1981); *Henry v. State,* 273 Md. 131, 147, 328 A.2d 293, 303 (1974); *Bartholomey v. State,* 267 Md. 175, 193, 297 A.2d 696, 706 (1972). In this respect § 413(c)(1)(v) is like the Model Penal Code provision bearing on the reception of evidence where sentencing is by court and jury in a capital case. The Model Penal Code § 210.6, 10 U.L.A. 534, 535 (1974) in part provides that "[a]ny such evidence, not legally privileged, which the Court deems to have probative force, may be received, regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant's counsel is accorded a fair opportunity to rebut such evidence."

The State argues that the trial judge could find that the proffered letters were not sufficiently probative so that there was no abuse of discretion in requiring that the authors be produced in person to testify. There was no question raised below by the State concerning the authenticity of the letters. Further, the letter from Captain Saunders recites that its content is based on his personal knowledge of the appellant over the preceding year. The letter from Mr. Rosenbaum is phrased as a description of personal observations.

Indeed, the trial judge indicated that he would have admitted the letters but for his concern over the penultimate paragraphs in each. Those paragraphs set forth the personal opinions of the authors on the sentence which should be imposed and were objectionable as irrelevant. Defense counsel, however, expressly requested that the offending paragraph in the letter from Mr. Rosenbaum be redacted and the same suggestion would apply to the letter from Captain Saunders. There is no explanation why the trial court rejected that suggestion. The relatively simple

mechanics of blocking out the offending paragraphs would not have delayed the proceedings.

We hold that the court abused its discretion in refusing to admit the proffered letters in redacted form. In *Johnson v. State*, 292 Md. 405, 443, 439 A.2d 542, 563 (1982), we observed:

> As is true in all other criminal causes, the sentencing authority in a death penalty case should be presented with a full range of relevant information so as to fashion a particular penalty in accord with "the prevalent modern penal philosophy of individualized punishment." *Logan v. State, supra*, 289 Md. at 481, 425 A.2d at 643. The task that the sentencer must perform in this regard is thus basically no different from that carried out daily by trial judges in other types of cases.

There is, and has been, nothing unusual about defense counsel presenting to the sentencing judge letters written on behalf of the convicted person by employers, family, clergy, and friends for whatever benefit those letters might bring.

More important, the exercise of discretion by the trial court in rejecting the proffered letters, even if redacted, should be measured against the type of evidence which is expressly admissible on behalf of the State in a capital sentencing proceeding. Section 413(c)(1)(iv) makes any pre-sentence investigation report admissible. Md. Code (1957, 1982 Repl.Vol., 1985 Cum.Supp.), Art. 41, § 124(d) required that the presentence report in this case include a victim impact statement.[4] The victim impact statement presented

---

**4.** The statute provides:
> (d) In any case in which the death penalty is requested under Article 27, § 412, a presentence investigation, including a victim impact statement, shall be completed by the Division of Parole and Probation, and shall be considered by the court or jury before whom the separate sentencing proceeding is conducted under Article 27, § 413.

Although subsection (d) was not in effect until after the murders, its provisions are procedural and were properly applied to the sentencing proceedings in this case.

**30**

relevant information, *see Lodowski v. State,* 302 Md. 691, 738–42, 490 A.2d 1228, 1252–54 (1985), but presented it in hearsay form. The relevant information in the proffered letters, albeit in hearsay form, was as probative as the information in the victim impact statement.

Nor was the error harmless beyond a reasonable doubt. Exclusion of the letters describing Reid's conduct in the year preceding trial enabled the prosecutor to make the following argument to the jury:

[T]he defendant through his attorney could present any witnesses he wanted to you about his background, to say anything that they could possibly come up with that was good and decent about this man. And the people who came into this court said two things about him, that he is just a petty thief and they'd be surprised if he were a killer. And the other thing was, Mr. Rogers came in and said that when he got out of the hospital, the defendant ran some errands for him. Of everybody that knows the defendant, of everything in his background, the best that people can say is, he's just a thief and that twelve years ago he did some kindness for some person.

The jury found that there were no mitigating circumstances so that the death sentence followed as a matter of course.

JUDGMENTS OF CONVICTION AND SENTENCES AFFIRMED, EXCEPT AS TO THE IMPOSITION OF THE DEATH SENTENCE FOR MURDER; DEATH SENTENCE VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR A NEW SENTENCING PROCEEDING UNDER § 413 OF ARTICLE 27.