843 A.2d 778

**Thomas Wayne JONES**

v.

**STATE of Maryland.**

**No. 57, Sept. Term, 2001.**

Court of Appeals of Maryland.

Feb. 18, 2004.

Reconsideration Denied April 2, 2004.

Fred Warren Bennett (Booth Marcus Ripke, Bennett & Nathans, LLP, on brief), Greenbelt, for petitioner.

Celia Anderson Davis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for respondent.

Argued before BELL, C.J., ELDRIDGE,* RAKER, WILNER, CATHELL, BATTAGLIA, THEODORE G. BLOOM (retired, specially assigned), JJ.

RAKER, J.

Petitioner presents a single question for review in this Court: Whether the Court of Special Appeals exceeded the outer limits of its discretion by improperly excusing the State's procedural default and remanding this case to the circuit court for further proceedings. This case is a post-conviction proceeding. The primary question before the post-conviction hearing court was whether trial counsel was ineffective for failing to object at trial to the admissibility of a hearsay statement. We hold that the Court of Special Appeals has the discretion, in the context of a post-conviction proceeding, to excuse a procedural default or waiver and did not abuse its discretion in this instance.

In December 1996, petitioner Thomas Wayne Jones was tried and convicted in the Circuit Court for Prince George's County of the first degree felony murder of Gary Gulston and other related offenses, including kidnapping, robbery with a deadly weapon, and use of a handgun in a felony. The trial court sentenced Jones to life without the possibility of parole for the felony murder conviction and consecutive terms of twenty years each for the handgun and armed robbery offenses; the remaining offenses were merged for sentencing purposes. In an unreported opinion, the Court of Special Appeals affirmed the conviction. Jones filed no appeal from that judgment.

In November 1998, Jones filed a petition for post-conviction relief pursuant to the Maryland Post Conviction Procedure Act, Md.Code (1957, 1996 Repl.Vol.) Art. 27, § 645A,[1] alleging

---

* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. The Maryland Post Conviction Procedure Act was recodified as the Uniform Postconviction Procedure Act, Md.Code (2001, 2003 Cum. Supp.) Tit. 7 of the Criminal Procedure Article.

that he had received ineffective assistance of trial and appellate counsel in violation of his constitutional rights under the Sixth and Fourteenth Amendments to the United States Constitution. As one of his bases for post-conviction relief, Jones argued that his trial and appellate counsel were constitutionally deficient because they failed to object to the admissibility of a hearsay statement contained within the written statement of Derrick Smith, a State witness. At Jones's trial, Smith in a written statement[2] had described how he, Jones, and Don Gutrick, another participant in the criminal episode, had planned and committed the robbery of Gary Gulston's home that resulted in the felony murder for which Jones was convicted. Within the written statement, Smith stated that Gutrick had told him that "we killed him," meaning that Gutrick and Jones had killed Gary Gulston. Because Jones's counsel never objected to the admissibility of this incriminating statement by Gutrick as hearsay contained within Smith's written statement, Jones claimed in his post-conviction petition that he received ineffective assistance of counsel at trial. The post-conviction court that adjudicated Jones's petition agreed with Jones and issued an order granting Jones a new trial, stating that "[Jones's counsel's] trial performance, although generally excellent, did fall below a standard of reasonableness when he failed to object to [Don Gutrick's statement]."

The State filed an Application for Leave to Appeal to the Court of Special Appeals pursuant to the Uniform Post Conviction Procedure Act, Md.Code (2001, 2003 Cum.Supp.) § 7–109 of the Criminal Procedure Article. The State presented several legal arguments for the admissibility of the incriminating statement, among which was the argument that Don Gutrick's remark was "clearly admissible as a statement of a coconspirator made during the course of and in furtherance of the conspiracy." *See* Maryland Rule 5–803(a)(5); *Perry v.*

---

**2.** Smith, having been convicted at the time of Jones's trial, was called as a State's witness but unexpectedly denied knowledge of and participation in the murders and related events. The State therefore offered Smith's written statement into evidence.

*State,* 344 Md. 204, 231–35, 686 A.2d 274, 287–89 (1996). This argument had not been raised in the post-conviction court, nor was it raised in the State's opening brief to the intermediate appellate court. In its reply brief, however, the State again stated the co-conspirator exception to the hearsay rule as an alternative theory for the statement's admissibility. Because of the State's failure to raise this theory initially upon appeal, Jones's counsel filed a motion to strike that portion of the State's reply brief. The Court of Special Appeals agreed, and found that the legal theory, raised for the first time in the reply brief, was not properly before the court and therefore would not be considered on the merits by that court.

After the Court of Special Appeals affirmed the decision of the post-conviction court, the State filed a Motion to Reconsider, arguing that the court had erred in refusing to consider the co-conspirator exception theory presented in the Application for Leave to Appeal and the reply brief. Although the Court of Special Appeals rejected the legal grounds of the State's motion, it revised its opinion and, in the exercise of its discretion, ordered a limited remand so that the post-conviction court might determine whether the hearsay statement was admissible under the co-conspirator exception to the hearsay rule. The Court of Special Appeals explained its action as follows:

"The cases cited above elucidate for us that, in a criminal case, the State can be found to have waived a valid claim, even if the waiver leads to the reversal of a conviction. On the other hand, when the State fails to raise an important argument, an appellate court ordinarily has discretion to review the record or the trial judge's ruling in its effort to reach a sound result. Similarly, the appellate court generally retains discretion to consider an argument that is belatedly raised.

"In light of the importance of the issue presented with regard to the co-conspirator exception, we have determined, in the exercise of our discretion, that a remand is appropriate, so that the parties will have an opportunity to fully litigate before the post-conviction court the question of

whether Gutrick's statement was admissible under the co-conspirator exception to the hearsay rule. Moreover, we believe a remand is appropriate because resolution of the issue in the context of a post-conviction proceeding will require careful analysis of the entire record, appropriate briefing, and, perhaps, further examination of defense counsel and appellate counsel.

"In reaching our decision to remand, we perceive that this is not a case in which the State made a tactical decision to forego raising the co-conspirator exception. Instead, it seems to have inadvertently omitted the argument from its initial brief after including it in the Application. Further, in contrast to some of the cases we have considered, the State eventually raised the co-conspirator issue in its reply brief; it did not fail altogether to raise the matter until after we ruled, as happened in some of the cases that we cited. Nor did it make the kinds of damaging or misleading concessions below that we saw in other cases that we discussed. To the contrary, the State has steadfastly maintained that Smith's entire statement was admissible and has persisted in its claim that Jones's conviction should be upheld."

*State v. Jones,* 138 Md.App. 178, 241–242, 771 A.2d 407, 444 (2001). Jones noted a timely petition for writ of certiorari, which we granted. 365 Md. 266, 778 A.2d 382 (2001).

Before this Court, petitioner contends the intermediate appellate court abused its discretion by considering the unpreserved issue and ordering the remand to the post-conviction court. He contends that by exercising its discretion to permit the post-conviction hearing court to determine the admissibility of the hearsay statement under the co-conspirator exception, the Court of Special Appeals effectively held the State to a lower standard for preservation of post-conviction and appellate arguments than it does for criminal defendants. Finally, petitioner argues that Maryland appellate courts have consistently applied the principle of waiver to preclude consideration of arguments raised belatedly, such as in this post-conviction proceeding in which the argument was raised for the first time in the reply brief. The end result, says petitioner, was an

appearance of partiality by the intermediate appellate court and a second chance by the State to resurrect a dead argument.

The State claims that the co-conspirator argument belatedly raised in its reply brief was a subsidiary of its bedrock theory that trial counsel did not render ineffective assistance, a theory that the State properly raised and maintained throughout the post-conviction proceedings. The post-conviction court could not resolve the claim of ineffective assistance of counsel without first determining whether the hearsay statement would have been admissible in any event. Thus, it was not an abuse of discretion for the Court of Special Appeals to order a remand on an issue that was necessarily included within the State's overarching objection to Jones's ineffective assistance of counsel claim. If Jones's trial counsel could not have prevented admission of Smith's written statement in any event, then Jones could not win his Sixth Amendment claim. The action by the Court of Special Appeals, according to the State, was a routine exercise of appellate judicial discretion pursuant to Maryland Rule 8–131(a).

## I.

The Court of Special Appeals exercised its authority twice when it ordered a remand to the post-conviction court. First, the court exercised its discretion to *consider an unpreserved argument.* Although that court did not address the merits of the State's theory under the co-conspirator exception, the court took up the belated argument implicitly when it decided to remand the case back to the post-conviction court. This act by the Court of Special Appeals is sufficient for us to determine that the court exercised the type of appellate discretion that permits consideration of unpreserved arguments.

The Court of Special Appeals exercised a second, distinct type of authority when it decided to *remand the issue to the post-conviction court.* This sort of authority is distinct from the discretion to consider unpreserved arguments or to excuse a procedural default or waiver, because a remand of an issue

requires that the issue, in some way or another, be properly before the remanding appellate court in the first place. In other words, the decision to consider an unpreserved argument was antecedent to the decision to remand.

Maryland Rule 8–131(a) permits the appellate courts to consider unpreserved issues:

"(a) **Generally.** The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."

The first sentence of the Rule sets forth the general principle that the question of subject matter jurisdiction may be raised at any time and thus may be raised properly for the first time on appeal. *See Lane v. State,* 348 Md. 272, 278, 703 A.2d 180, 183 (1997). The second sentence of the Rule articulates the ordinary and strong presumption that appellate review is limited to those issues raised at the trial level. We are concerned in this case with the second aspect of Rule 8–131(a).

■ The second sentence of Rule 8–131(a) sets forth the general proposition that an appellate court *ordinarily* will not consider an issue that was not raised or decided by the trial court. The plain language of the rule, however, makes clear that the prohibition is not absolute. *See Crown Oil v. Glen,* 320 Md. 546, 561, 578 A.2d 1184, 1191 (1990) (noting that, inasmuch as Rule 8–131(a) employs the term "ordinarily," it permits exceptions, and appellate courts have occasionally decided cases on issues not previously raised). The word "ordinarily" in Rule 8–131(a) anticipates that an appellate court will, on appropriate occasion, review unpreserved issues. This has been the practice of the Maryland appellate courts, as well as of the federal courts and our sister states, dating

well before Rule 8–131(a). *See Atlantic Mutual v. Kenney,* 323 Md. 116, 122, 591 A.2d 507, 510 (1991) (noting that Rule 8–131(a) is simply enunciatory of the practice which has existed since 1825); *see also* Annot., *Issue First Raised on Appeal,* 76 A.L.R. Fed. 522 (1986). In *State v. Bell,* 334 Md. 178, 638 A.2d 107 (1994), we concluded:

> "It is clear from the plain language of Rule 8–131(a) that an appellate court's review of arguments not raised at the trial level is discretionary, not mandatory. The use of the word 'ordinarily' clearly contemplates both those circumstances in which an appellate court will not review issues if they were not previously raised and those circumstances in which it will."

*Id.* at 188, 638 A.2d at 113. Thus, under the Rule, an appellate court has discretion to excuse a waiver or procedural default and to consider an issue even though it was not properly raised or preserved by a party. In this case, the default is two-fold. In the first instance, the State failed to present the co-conspirator theory to the post-conviction hearing court. Compounding that error, the State did not raise the argument in its opening brief on appeal, subjecting it to the rule that an appellate court ordinarily will not consider an issue raised for the first time in a reply brief. *Fearnow v. Chesapeake & Potomac Telephone,* 342 Md. 363, 384, 676 A.2d 65, 75 (1996).

There is no fixed formula for the determination of when discretion should be exercised, and there are no bright line rules to conclude that discretion has been abused. *See State v. Hutchinson,* 287 Md. 198, 202, 411 A.2d 1035, 1038 (1980) (refusing to set forth a "fixed formula" for determining when the exercise of appellate discretion in considering an unpreserved issue is proper). We have, however, laid out in prior cases, by explanation and example, principles to guide the courts when consideration of unpreserved issues might be proper.

The primary purpose of Rule 8–131(a) is to ensure fairness for all parties and to promote the orderly administra-

tion of law. *See Conyers v. State,* 367 Md. 571, 594, 790 A.2d 15, 29 (2002). Although the interests of fairness generally are furthered by requiring the issues to be brought first to the attention of the trial court so that the trial court may pass upon it in the first instance, the appellate court has the discretion to excuse the default and consider the issue. *Id.* This discretion should be exercised only when it is clear that it will not work an unfair prejudice to the parties or to the court. While the authority to review unpreserved issues is discretionary, it should not be exercised when it will work an unfair prejudice to the parties. *Bell,* 334 Md. at 191, 638 A.2d at 114. Therefore, the animating policy behind Rule 8–131(a) is to ensure fairness for the parties involved and to promote orderly judicial administration. Thus, when presented with a plausible exercise of this discretion, appellate courts should make two determinations concerning the promotion or subversion of 8–131(a)'s twin goals.

■ First, the appellate court should consider whether the exercise of its discretion will work unfair prejudice to either of the parties. *Id.* at 189–90, 638 A.2d at 113–14. For example, with respect to the parties, a new argument presented by the State would work unfair prejudice to a criminal defendant if its validity depended upon evidence not adduced at the trial level. *Id.* In such a case, an appellate court's consideration of the argument would most likely be an abuse of its discretion under Rule 8–131(a) because it would be manifestly unfair to the defendant who had no opportunity to respond to the argument with his own evidence to the contrary. Similarly, unfair prejudice may result if counsel fails to bring the position of her client to the attention of the lower court so that that court can pass upon and correct any errors in its own proceedings. *Id.* In addition, the reviewing court should look to the reasons for the default or waiver. The court should consider whether the failure to raise the issue was a considered, deliberate one, or whether it was inadvertent and unintentional. *See, e.g., Conyers,* 367 Md. at 595–596, 790 A.2d at 30.

Second, the appellate court should consider whether the exercise of its discretion will promote the orderly administration of justice. This simply means that the Rule seeks to prevent the trial of cases in a piecemeal fashion, thereby saving time and expense and accelerating the termination of litigation. *See, e.g., Crown Oil,* 320 Md. at 562–63, 578 A.2d at 1191. Although this policy goal does not *require* that the case be remanded back to the court, it does imply that an appellate court should feel less constrained by the ordinary course of issue preservation when its decision to raise an unpreserved issue will not effect but will improve the efficiency of judicial administration. *See id.*

Finally, we note that we do not reverse the Court of Special Appeals for the exercise of its discretion unless it has clearly been abused. While this Court retains its own independent discretion to hear unpreserved arguments, *Squire v. State,* 280 Md. 132, 134, 368 A.2d 1019, 1020 (1977), that does not mean we review the discretionary functions of the lower appellate court *de novo.* To the contrary, we respect the judgment of the Court of Special Appeals in determining whether it needed to consider the issue for the proper execution of justice, and unless upon our review that court abused its discretion under the Rule, we will not substitute our judgment for theirs. *Fearnow,* 342 Md. at 384, 676 A.2d at 75; *Ritchie v. Donnelly,* 324 Md. 344, 375, 597 A.2d 432, 447 (1991); *see also Hutchinson,* 287 Md. at 204 n. 1, 411 A.2d at 1038 n. 1 (applying abuse of discretion standard to Court of Special Appeals's discretion to take cognizance of and correct plain error).

Turning now to the case *sub judice* and applying the analytic framework and standard of review outlined above, we hold that the Court of Special Appeals did not abuse its discretion to consider the unpreserved argument on appeal under Rule 8–131(a). We find little if any prejudice generated against either petitioner or the post-conviction court by the Court of Special Appeals's exercise of discretion in this matter; furthermore, we find the second policy goal of Rule 8–

131(a), orderly and efficient judicial administration, strongly favors the outcome determined by the intermediate appellate court.

Putting our ruling in context, it is helpful to imagine hypothetically what would happen if the Court of Special Appeals had *not* exercised its discretion and had only affirmed the post-conviction court. In that case, Jones would receive a new trial, and the State surely would submit Smith's written statement, upon which Jones's new trial counsel, this time, would just as surely object to Gutrick's hearsay statement within Smith's written statement. Now, the State would respond with the co-conspirator exception argument that was foreclosed to it by the post-conviction proceedings, and the trial court would decide this matter of law. Essentially, the scenario would unfold whereby the question regarding the co-conspirator exception would be fully litigated even if there was no remand and petitioner's position prevailed in this Court. The only difference between the above hypothetical scenario and the current decision by the Court of Special Appeals to litigate the question in post-conviction proceedings is that the former requires the extreme and expensive measure of both empaneling a new jury and relitigating every single issue and fact relevant to Jones's conviction. The absurdity of this is made even more clear when it is understood that depriving the post-conviction court from determining this legal issue could result in the hearsay statement reaching the jury in the same manner as in Jones's original trial—*nothing* will have changed.

On the other hand, pursuant to the Court of Special Appeals's order to remand, the post-conviction judge will have the opportunity to determine the question of law, the admissibility of Derrick Smith's statement. If the judge determines that the statement is inadmissible, then Jones will receive his new trial. If, on the other hand, the judge determines that the statement is admissible, the post-conviction court will deny his post-conviction petition for relief based on ineffective assistance of counsel because in that case his rights were never violated.

Finally, we note, as did the Court of Special Appeals, that the State has never wavered from its position that the statement was admissible in its entirety, and that therefore Jones was afforded sufficient assistance of counsel. The State did not make a tactical decision to forgo, waive, or concede the argument that the statement was admissible under the co-conspirator argument and, indeed, had clearly set forth the legal theory in its Application for Leave to Appeal. The State's failure to mention it again in its opening brief therefore appears to have been an inadvertent and pure oversight. While such a mistake is serious, we do not think it was an abuse of discretion for the lower appellate court to excuse it in light of the fact that Jones will suffer no prejudice (except the loss of a new trial he may never have been entitled to in the first place) and the substantial judicial resources that will be saved by adjudication of this collateral matter.

## II.

Initially, we addressed only the propriety of the antecedent determination by the Court of Special Appeals to consider, in the exercise of its discretion, the unpreserved argument because the propriety of the Court of Special Appeals's "limited" remand was raised solely by the State. In this regard, petitioner vigorously denounced the State's understanding of his argument, stating as follows:

> "In this Court, Petitioner did not focus his challenge on the [decision by the Court of Special Appeals to order a limited remand]. Instead, Petitioner respectfully requested that this Court find that the Court of Special Appeals erred prior to that by failing to hold the State to the well-established rules for record/claim preservation. . . .
>
> "Whether the Court of Special Appeals abused its discretion is the primary question before this Court."

Petitioner's Reply Brief at 2–3. The dissent believes that petitioner raises the propriety of the remand and that the

issue should be addressed,[3] even though it was the *petitioner* who asked that the issue not be addressed. Because the heart of the dissent's argument relates to the remand, we will respond.

The dissent's characterization of the hearsay issue as "integral" and not collateral (and therefore inappropriate for limited remand) is without merit. The hearsay issue in the instant case is part and parcel of the larger issue before the reviewing court—the claim of ineffective assistance of counsel—and that larger issue is indisputably a collateral matter. The fact that the hearsay issue is integral to determination of the *collateral* Sixth Amendment challenge is irrelevant to the question of whether the matter is appropriate for remand.

The crux of the dissent's argument appears to rest on the mistaken belief and novel suggestion that "post-conviction proceedings are the *equivalent of a trial*," and that the "appropriate question is whether the issue is *collateral to . . . the proceedings out of which they arise.*" Dissenting op. at 11 (emphases added). This has never been the law in this State, nor should it be. By definition, a post-conviction proceeding is collateral, and thus the issues adjudicated in that proceeding are *ipso facto* collateral and appropriate for remand.

---

3. The dissent's belief that petitioner argued that the intermediate appellate court abused its discretion in ordering the limited remand belies petitioner's express statement that "the propriety of the limited remand [is] not relevant to the question before this Court." Petitioner's Reply Brief at 3. The dissent relies on the "question presented" in petitioner's opening brief which is manifestly ambiguous as to whether the question relates to just the excuse of the procedural default or to both the default and the limited remand, *see* dissenting op. at 4; a sentence in petitioner's reply brief that, taken in context, clearly furthered *petitioner's* argument that the limited remand issue should not be decided by this Court, *see* Petitioner's Reply Brief at 3; dissenting op. at 4; and a heading in petitioner's reply brief that is irrelevant to the dissent's (mistaken) belief about the question petitioner wanted this Court to address, *see* dissenting op. at 4–5. Petitioner did not present a single argument—apart from his core argument that the remand was improper because the antecedent excuse of the procedural default was improper (which we address)—in either its opening or reply brief that addressed the issue of the limited remand and, to the contrary, expressly asked this Court *not* to address it.

██ The dissent's view that this case falls within our case law on limited remands as set forth in *Gill v. State*, 265 Md. 350, 289 A.2d 575 (1972), and its progeny is wrong. Of course, as the dissent correctly notes, *Gill* is not limited to its facts; nonetheless, this case is not a *"Gill"* case and does not fall within the rationale of *Gill*. The issue in *Gill* was the voluntariness of a confession, a matter which is a mixed question of law and fact specially designated for the ultimate determination by a jury. In *Gill*, we held as follows:

> "[A] remand solely for a redetermination of the confession's voluntariness can never be permitted in a jury trial since even if the trial judge again concludes the statement was voluntary, that only establishes, prima facie, it was uncoerced. *The jury still must have the opportunity to consider the evidence* pertaining to its voluntariness before deciding whether the accused is guilty or innocent. This *inviolable jury function* would be eliminated unless the judgment was reversed and a new trial awarded."

*Id.* at 358–59, 289 A.2d at 580 (emphases added). Under Maryland law, the jury must find a confession to be voluntary beyond a reasonable doubt before the statement may be considered. *See Brittingham v. State*, 306 Md. 654, 665, 511 A.2d 45, 50 (1986).

## III.

In sum, the comparison of the two alternatives open to the intermediate appellate court makes clear (1) that it was not manifestly unfair or prejudicial to Jones for the Court of Special Appeals to take up the issue of the co-conspirator exception, and (2) that the interests of judicial economy are strongly furthered, not subverted, by exercise of appellate discretion. It would be unreasonable and inconsistent for this Court to conclude, particularly under the deferential standard afforded such judicial discretion, that the Court of Special Appeals abused its discretion under Rule 8–131(a) to reach a result that promoted the Rule's twin policy goals. We will not do so, and instead affirm the Court of Special Appeals's exercise of judicial discretion in this case.

720

*JUDGMENT AFFIRMED, WITH COSTS TO BE PAID BY PETITIONER.*

BELL, C.J., and CATHELL, J., dissent.

Dissenting Opinion by BELL, C. J.

This case involves the propriety of the Court of Special Appeals' remand of this case, pursuant to Maryland Rule 8–131 and Maryland Rule 8–604, to the post conviction court to consider an issue, substantive in fact, to the underlying post conviction proceedings,[4] that could have been, but was not, raised during the post conviction trial, or at any time in the intermediate appellate court until the State submitted its reply brief in that court.[5]

As the majority states, 379 Md. 704, 711–12, 843 A.2d 778, 782–83 (2004), the Court of Special Appeals exercised discretion on two occasions: when it considered, the issue in this case, even though it was neither raised in, nor decided by the trial court, and when it ordered a remand to the post conviction court for the specific purpose of addressing the State's argument that State Witness Smith's statement would have been admissible under the co-conspirator exception to the hearsay rule. An appellate court's exercise of discretion to consider issues not previously presented before the lower

---

**4.** There is no automatic right of appeal in post conviction cases; a party aggrieved by the decision of the post conviction court must seek leave to appeal, *see* Maryland Code (1957, 1996 Replacement Volume) Article 27, §§ 645E and 645–I, now Maryland Code (2001) § 7–109 of the Criminal Procedure Article; Maryland Rule 8–204. The State was granted leave to appeal in this case.

**5.** In support of its application for leave to appeal, it argued, *inter alia,* that "It is clear from the context of this statement and the other evidence presented at trial that Donald Gutrick's remark to Derrick Smith was made before the criminal enterprise that started at 6804 Alpine St. was over.... The remark was clearly admissible as a statement of a coconspirator made during the course of and in furtherance of the conspiracy."
*State v. Jones,* 138 Md.App. 178, 228, 771 A.2d 407, 436–37 (2001). It did not make that argument in its initial brief filed in the Court of Special Appeals, however, making it only when it filed its reply brief.

court is governed by Maryland Rule 8–131, section (a) of which addresses the scope of appellate review. It provides:

"**(a)** *Generally.* The issues of jurisdiction of the trial court over the subject matter and, unless waived under Rule 2–322, over a person may be raised in and decided by the appellate court whether or not raised in and decided by the trial court. Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."

Md. Rule 8–131(a).[6] Pursuant to this rule, an appellate court may consider an issue raised for the first time on appeal if it determines that to do so is "necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."

Exercising its discretion, the Court of Special Appeals initially chose not to review the State's co-conspirator argument, newly raised on appeal, and struck the portion of the State's reply brief raising it. *State v. Jones,* 138 Md.App. 178, 231, 771 A.2d 407, 439 (2001). Upon consideration of the State's subsequently filed Motion for Reconsideration,[7] the Court of

---

6. This Court has made clear that this section's use of the word "ordinarily" indicates that it merely states the usual rule and is not absolute. *Gindes v. Khan,* 346 Md. 143, 151, 695 A.2d 163, 167 (1997). Thus, an appellate court's decision to review arguments not raised at trial is discretionary, not mandatory. *State v. Bell,* 334 Md. 178, 188, 638 A.2d 107, 113 (1994).

7. In that motion, the State presented yet another argument for the first time, contending "in effect, that its belated argument was not waivable, because the issue is whether defense counsel was or was not ineffective, regardless of whether the State proposes a valid basis to justify defense counsel's performance." *Jones,* 138 Md.App. at 232, 771 A.2d at 439. The intermediate appellate court rejected that argument, which it characterized as being that "even if [the State] did not timely offer a valid reason to show that defense counsel was not ineffective, an appellate court has an independent obligation to determine whether the

Special Appeals changed its mind and exercised its discretion to consider the unpreserved argument. *Id.* at 241, 771 A.2d at 444.

It is clear that an appellate court in this State may remand a criminal case to the trial court for further proceedings. Maryland Rule 8–604, in pertinent part, provides:

"(a) Generally. As to each party to an appeal, the Court shall dispose of an appeal in one of the following ways:

"(1) dismiss the appeal pursuant to Rule 8–602;

"(2) affirm the judgment;

"(3) vacate or reverse the judgment;

"(4) modify the judgment;

"(5) remand the action to a lower court in accordance with section (d) of this Rule; or

"(6) an appropriate combination of the above.

"(b) Affirmance in Part and Reversal, Modification, or Remand in Part. If the Court concludes that error affects a severable part of the action, the Court, as to that severable part, may reverse or modify the judgment or remand the action to a lower court for further proceedings and, as to the other parts, affirm the judgment.

\*     \*     \*     \*     \*     \*

---

defense attorney's performance was, in fact, constitutionally deficient." *Id.* at 234, 771 A.2d at 440. It explained:

"In our view, the logical extension of the State's position is that there are no time constraints that apply with respect to a claim by the State that defense counsel was not constitutionally ineffective. If the State is permitted to raise a new but valid argument for the first time in its reply brief, or in a motion to reconsider after an appellate ruling is issued, then it could also raise an argument for the first time long after the Court has ruled. Moreover, applying the State's reasoning, it would be incumbent upon the Court to consider the possible universe of reasons justifying a lawyer's strategy or course of action, even if the State never raises such a point. In the extreme, the State's position means that its failure to justify defense counsel's representation is virtually irrelevant, because it is incumbent on the appellate court to determine whether there is any basis to sustain the representation afforded by defense counsel."
*Id.*

"(d) Remand.

"(1) Generally. If the Court concludes that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment, or that justice will be served by permitting further proceedings, the Court may remand the case to a lower court. In the order remanding a case, the appellate court shall state the purpose for the remand. The order of remand and the opinion upon which the order is based are conclusive as to the points decided. Upon remand, the lower court shall conduct any further proceedings necessary to determine the action in accordance with the opinion and order of the appellate court.

"(2) Criminal Case. In a criminal case, if the appellate court reverses the judgment for error in the sentence or sentencing proceeding, the Court shall remand the case for resentencing."

See *Gill v. State*, 265 Md. 350, 357, 289 A.2d 575, 578–79 (1972).[8]

The majority believes that only one of the two exercises of discretion by the Court of Special Appeals is properly before this court on review; namely the propriety of the antecedent determination by the Court of Special Appeals to consider, in the exercise of its discretion, the unpreserved argument. The propriety of the limited remand decision, it says, was raised by the State and, in effect, rejected, certainly not adopted, by the petitioner, as the following argument from the petitioner's reply brief indicates:

"In this Court, Petitioner did not focus his challenge on the [decision by the Court of Special Appeals to order a limited remand]. Instead, Petitioner respectfully requested that this Court find that the Court of Special Appeals erred prior to

---

8. In a Committee note, citing *Gill v. State*, 265 Md. 350, 289 A.2d 575 (1972); *Wiener v. State*, 290 Md. 425, 438, 430 A.2d 588, 596 (1981); and *Reid v. State*, 305 Md. 9, 17, 501 A.2d 436, 440 (1985), the Court stated its intention not to change existing case law regarding limited remands in criminal cases.

that by failing to hold the State to the well-established rules for record/claim preservation....

"Whether the Court of Special Appeals abused its discretion is the primary question before this Court."

*Id.* at 718, 843 A.2d at 786, quoting Petitioner's Reply Brief at 2–3. Construing that one paragraph as an intentional restriction of the petitioner's argument in this Court, it believes that the issue of limited remand is not an issue before this court.

A review of the petitioner's initial and reply briefs, clearly discloses that the petitioner argued that the intermediate appellate court abused its discretion both in excusing the State's waiver of an unpreserved issue and in ordering a limited remand.

To start with, the question presented in the petitioner's initial brief addresses and challenges the propriety of the remand. It reads:

"Did the Court of Special Appeals exceed the outer limits of its discretion by improperly excusing the State's procedural default of an issue at both the post-conviction hearing and on this appeal, resurrecting one of the State's undeniably dead claims, *and remanding this case to the circuit court for further post-conviction proceedings?*"

Petitioner's Brief at 5–6 (emphasis added). Furthermore, in its reply brief, in the very portion of the argument on which the majority relies, the petitioner characterizes the preservation issue as the "primary," not the "only," question before the Court. He also stated that "[c]ertainly, under the circumstances of this case, a limited remand was the wrong solution because it unfairly prejudiced Petitioner." Petitioner's Reply Brief at 2. Moreover, one of the headings to the arguments that the petitioner advanced in his Reply Brief was "THE STATE ERRONEOUSLY TRIES TO CONVINCE THIS COURT THAT THE COURT OF SPECIAL APPEALS ISSUED A LIMITED REMAND FOR REASONS OTHER THAN TO CONSIDER THE CLAIM THE STATE FAILED TO PROPERLY PRESERVE." Petitioner's Reply Brief at 3.

Although the issue of remand may have been secondary to the petitioner's primary argument, the propriety of the Court of Special Appeals' initial exercise of discretion to consider an unpreserved argument, I believe, should be fully addressed. The majority's analysis, to the extent that it does address the issue, is simply wrong.

It is clear that an appellate court in this State may remand a criminal case, to the trial court for further proceedings. It is also well settled that, given the purpose and application of Rule 8–604(d), the remand can be for a limited, or restricted, purpose. *Southern v. State*, 371 Md. 93, 104–105, 807 A.2d 13, 20 (2002). *See also McMillian v. State*, 325 Md. 272, 296–97, 600 A.2d 430, 442 (1992); *Bailey v. State*, 303 Md. 650, 496 A.2d 665 (1985); *Warrick v. State*, 302 Md. 162, 486 A.2d 189 (1985); *Mahammitt v. State*, 299 Md. 82, 86, 472 A.2d 477, 479 (1984); *Wiener v. State*, 290 Md. 425, 438, 430 A.2d 588, 596 (1981).

Nevertheless, we have stated that "Rule 8–604(d) is neither an 'antidote' for the errors of the State or of counsel nor a method to correct errors committed during the trial itself." *Southern*, 371 Md. at 104, 807 A.2d at 19, citing *Reid v. State*, 305 Md. 9, 17, 501 A.2d 436, 440 (1985); *Comptroller of Treasury v. Panitz*, 267 Md. 296, 301, 297 A.2d 289, 292(1972); *Earl v. Anchor Pontiac Buick, Inc.*, 246 Md. 653, 659, 229 A.2d 412, 416 (1967). Where, therefore, the issue to be resolved on the limited remand is collateral to the proceedings out of which the issue arose, a limited remand is proper. *See Edmonds v. State*, 372 Md. 314, 339–342, 812 A.2d 1034, 1048–50 (2002) (challenge pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)); *Warrick v. State*, 326 Md. 696, 707–708, 607 A.2d 24, 30 (1992) (remand for in camera examination to determine whether defendant entitled to disclosure of informant's identity, and whether defendant prejudiced by non-disclosure); *McMillian, supra*, 325 Md. at 288, 600 A.2d at 438 (remand to determine voluntariness of consent to search proper where, because the trial court erroneously determined that a police entry was justified by exigent circumstances, the trial court failed to consider the illegal

entry along with the other evidence in deciding the issue initially); *Reid v. State*, 305 Md. 9, 17–18, 501 A.2d 436, 440 (1985) (limited remand to determine authenticity of two letters submitted by death penalty defendant as to his good character); *Bailey, supra*, 303 Md. at 658–59, 496 A.2d at 669–70 (remand to consider whether defendant prejudiced proper where, due to an erroneous discovery ruling, the court did not consider the issue); *Warrick, supra*, 302 Md. at 172–74, 486 A.2d at 194–95 (remand proper where, because of the application of too narrow an interpretation of a discovery rule to motion to compel discovery, record fails to demonstrate whether State possessed material or information that it should have produced); *Mahammitt, supra*, 299 Md. at 86, 472 A.2d at 479 (where record reveals little other than that the defendant was not tried within 180 days, limited remand to determine whether there was a violation of the 180 day rule appropriate); *Wiener, supra*, 290 Md. at 438, 430 A.2d at 596 ("Here, the hearing to determine the facts underlying Wiener's motion claiming denial of the right to the effective assistance of counsel was collateral to the criminal trial itself").

Conversely, when the error giving rise to the issue to be addressed on limited remand is one that is integral to the proceedings in which it occurred, the appropriate mandate would not be a remand for further proceedings to resolve the issue. Rather, the appropriate mandate would be a remand for new trial. *Gill v. State*, 265 Md. 350, 289 A.2d 575 (1972). In *Gill*, the issue was whether the defendant's confession was voluntary. *Id.* At trial, the defendant argued that his confession was coerced; however, only one of the two officers to whom the defendant confessed testified as to the circumstances under which the confession was given. Further, the officer that the defendant maintained coerced his confession while they were alone did not testify. Nevertheless, the court admitted the confession into evidence over the defendant's objection. The Court of Special Appeals agreed with the defendant's assertion that the " 'failure of the police officers involved to take the stand to deny a direct accusation by the appellant would indicate that the State had failed to meet its constitutional burden to prove voluntariness of the confes-

sion.' " *Id.* at 353, 289 A.2d at 577, quoting *Gill v. State*, 11 Md.App. 378, 384, 274 A.2d 667, 670 (1971) (*Gill I*). Rather than remand the case to the trial court for new trial, the intermediate appellate court ordered the case returned to the trial court " 'for a redetermination of the question of voluntariness after taking additional testimony' ". *Id.* at 354, 289 A.2d at 577, quoting *Gill I,* 11 Md.App. at 384, 274 A.2d at 670. The trial court reconfirmed its prior voluntariness ruling and the Court of Special Appeals affirmed the judgment in an unreported opinion. *Id.* at 354–55, 289 A.2d at 577–78. We reversed, holding that although Rule 1071(a),[9] the predecessor to Rule 8–604(d), "may be suitable to correct procedures subsidiary to the criminal trial, it can never be utilized to rectify prejudicial errors committed during the trial itself." *Id.* at 357, 289 A.2d at 579. Noting this State's well-settled two-tier practice employed to determine the voluntariness of a defendant's confession, the Court concluded that "the admissibility of a confession is always an integral part of the trial. This is not only true of the confession, *per se,* but it also encompasses the entire process of ascertaining, prima facie, that it was legally obtained." *Id.* We further stated:

---

9.  Maryland Rule 1071(a) provided:

"a.   For Further Proceedings. If it shall appear to this Court that the substantial merits of a case will not be determined by affirming, reversing or modifying the judgment from which the appeal was taken, or that the purposes of justice will be advanced by permitting further proceedings in the cause, either through amendment of the pleadings, introduction of additional evidence, or otherwise, then this Court, instead of entering a final order affirming, reversing or modifying the judgment from which the appeal was taken, may order the case to be remanded to the lower court. Upon remand to the lower court, such further proceedings shall be had by amendment of the pleadings, introduction of additional evidence, making of additional parties, or otherwise, as may be necessary for determining the action upon its merits as if no appeal had been taken and the judgment from which the appeal was taken had not been entered; provided, however, that the order entered by this Court in remanding said case, and the opinion of this Court on which said order is passed, shall be conclusive as to the points finally decided thereby. In such an order remanding a case this Court will express the purpose for so remanding and in its opinion filed with said order will determine all questions which may have been properly presented."

"[t]herefore, it becomes quite apparent that a remand solely for a redetermination of the confession's voluntariness can never be permitted in a jury trial since even if the trial judge again concludes the statement was voluntary, that only establishes, prima facie, it was uncoerced. The jury still must have the opportunity to consider the evidence pertaining to its voluntariness before deciding whether the accused is guilty or innocent. This inviolable jury function would be eliminated unless the judgment was reversed and a new trial awarded."

*Id.* at 358–59, 289 A.2d at 580.

The *Gill* holding is not limited to its facts. We relied on *Gill* to reverse a limited remand ordered by the Court of Special Appeals in *Lipinski v. State,* 95 Md.App. 450, 622 A.2d 145 (1993) (*Lipinski* I). In *Lipinski,* the only contested issue was what sanction should have been applied after the trial judge, in enunciating his decision at the defendant's bench trial, relied on a flawed definition of "deliberate and premeditated", *Lipinski v. State,* 333 Md. 582, 583–84, 636 A.2d 994, as discussed in *Willey v. State,* 328 Md. 126, 613 A.2d 956 (1992). The intermediate appellate court remanded the case to the trial court with the direction that it "consider the evidence in accordance with the standard enunciated ... in *Willey* ..., as to whether [Lipinski] acted with premeditation and deliberation." *Lipinski,* 333 Md. at 584, 636 A.2d at 995. We held:

"Here, the definition by the judge of the crime charged was not subsidiary to the criminal trial. The court's analysis of the crime of premeditated murder was prejudicially erroneous, and the error was committed during the trial itself. Rule 8–604(d) may not be utilized to rectify that error."

*Id.* at 592, 636 A.2d at 998–99.

Similarly, in *Mitchell v. State,* 337 Md. 509, 654 A.2d 1309 (1995), we considered "whether a new trial, rather than a limited remand, is required when a trial court fails to conduct a sufficient inquiry to determine whether a criminal defendant's reasons for appearing at trial without counsel are meritorious before ruling that the defendant had waived the

right to counsel by inaction." *Id.* at 511, 654 A.2d at 1310. We held that a new trial was the proper sanction, holding "that a limited remand was not appropriate because the issue of whether Mitchell waived his right to counsel was not subsidiary to the criminal trial." *Id.* at 515, 654 A.2d at 1312. Explaining, we said:

> "The key to determining the propriety of the limited re-mand is whether the required inquiry was so intertwined with the trial that a limited remand could cause the defendant to suffer great prejudice. The controlling factor is not, as the intermediate appellate court stated, whether the error occurred during the trial; it is whether the error adversely affected the defendant's right to a fair trial.
> "If the case at bar were remanded for a determination of whether Mitchell's reason for appearing without counsel was meritorious, Mitchell would have to reconstruct his actions of over two years ago. He must also recall the dates and contents of conversations with representatives of the Office of the Public Defender, in addition to how much money had been paid and how much money was owed to the private attorney he had previously attempted to retain. The potential prejudice to Mitchell is obvious, and a limited remand in this case would be fundamentally unfair."

*Id.* at 517, 624 A.2d at 1313, citing *Gill*, 265 Md. at 357, 289 A.2d at 579.

Our most recent pronouncement on this subject was made in *Southern v. State, supra,* 371 Md. 93, 807 A.2d 13. We granted certiorari in that case to consider whether it was proper for the Court of Special Appeals to order a limited remand to allow the State to introduce evidence supporting the legality of an initial stop, where the defense challenged its legality at a suppression hearing and the State failed to introduce any evidence on that issue. *Id.* at 96, 807 A.2d at 15. Although it recognized that once the defendant challenged the propriety of the stop, the State had the burden "to present evidence justifying its actions," *id.* at 105–106, 807 A.2d at 20, citing *DiPasquale v. State,* 43 Md.App. 574, 578, 406 A.2d 665, 667 (1979), the intermediate appellate court held that the

constitutionality of the stop had not been resolved and, therefore "granted a remand permitting the State to, in essence, reopen the suppression proceeding in order to introduce new evidence regarding the initial stop." *Id.* at 106, 807 A.2d at 21. We rejected that approach, and noted that the trial court denied the defendant's Motion to Suppress despite the fact that the State did not meet its burden of proof on the issue. Accordingly, we elucidated that "Rule 8–604 does not afford parties who fail to meet their burdens on issues raised in a completed suppression hearing an opportunity to reopen the suppression proceeding for the taking of additional evidence after the appellate court has held the party has failed to meet its evidentiary burden." *Id.* at 105, 807 A.2d at 19–20. We furthermore stated that "[t]he Court of Special Appeals went astray when it attempted to afford the State the opportunity to relitigate, in the same case, an issue it had failed to litigate and prove." *Id.* at 110, 807 A.2d at 23. We concluded:

"The purpose of the remand was not to correct a procedural error, but to afford the State an additional opportunity to do that which it previously failed to do-present evidence on the initial stop. This is not a case where the motions hearing judge simply did not rule, it is a case where the State, which had the burden of proof on the constitutionality of the initial detention at the suppression hearing, admits that it did not present sufficient evidence to support the constitutionality of the stop. Without taking additional evidence at a renewed hearing, the State obviously cannot meet its burden."

*Id.* at 106, 807 A.2d at 21.

In this case, the trial and the direct appeal of the judgment thereby rendered have long since ended. Those judgments were not at issue in this case. At issue was, rather, the propriety of the trial court's ruling at the post conviction hearing that the petitioner's trial counsel rendered the petitioner ineffective assistance. Whether the Smith hearsay statement, as a statement of an alleged participant with the petitioner in the criminal activity, was admissible against the petitioner as the statement of a co-conspirator is integral to, if not critical to, the resolution of that issue.

To be sure, post conviction proceedings themselves are collateral to the trial. When issues ordinarily cognizable on post conviction are pursued in the context of the trial, i.e., by litigating the competence of counsel on direct appeal, *see, e.g., Harris v. State,* 299 Md. 511, 517, 474 A.2d 890, 892–93 (1984),[10] the admissibility of a statement bearing on a defendant's guilt or innocence may be a proper subject for a limited remand because the issue is collateral to the substantive merits of the trial. Where, however, as in this case the judgment rendered at trial is final, the post conviction proceedings are being pursued separately to attack that judgment collaterally, and those proceedings are the only proceedings extant, the post conviction proceedings are the equivalent of a trial inasmuch as it becomes the relevant judicial proceeding. In this context, inquiring as to the relevance and connection of an issue to the trial is not the appropriate question. The appropriate question is whether the issue is collateral to, or integral to, the proceedings out of which they arise; in this case, the post conviction proceedings.

In the case *sub judice,* the petitioner challenged his conviction in post conviction proceedings on the basis that his trial and appellate counsel rendered ineffective assistance. As to trial counsel, he alleged that the ineffective assistance occurred when he failed to object to the admission of the Smith hearsay statement. Although the State defended counsel's effectiveness, it did not do so on the grounds that the statement was admissible pursuant to the co-conspirator's exception to the hearsay rule, the grounds it now pursues and on

---

**10.** This Court has pointed out, *In Re: Parris W.,* 363 Md. 717, 726, 770 A.2d 202, 207 (2001), that

"It is the general rule that a claim of ineffective assistance of counsel is raised most appropriately in a post-conviction proceeding pursuant to Maryland Code (1958, 1996 Repl.Vol., 2000 Supp.) Article 27, § 645A. *See, e.g., Austin v. State,* 327 Md. 375, 394, 609 A.2d 728, 737 (1992); *Johnson v. State,* 292 Md. 405, 434–35, 439 A.2d 542, 559 (1982). The primary reason behind the rule is that, ordinarily, the trial record does not illuminate the basis for the challenged acts or omissions of counsel. See *Johnson,* 292 Md. at 434–35, 439 A.2d at 559."

*See also Mosley v. State,* 378 Md. 548, 562, 836 A.2d 678, 686, (2003).

the basis of which the case has been remanded. Rather, the State argued that counsel did object to the statement and that it was admissible under *Nance* as a prior inconsistent statement. In fact, the State never argued the co-conspirator exception during the post conviction hearing. Furthermore, although it referred to the exception in the Application for Leave to Appeal, the State failed to make the argument in its initial brief to the Court of Special Appeals.

*Gill,* its progeny and, indeed, all of the cases in which a special or limited remand have been ordered involved direct appeals of a criminal judgment. It is not surprising, therefore, that all of them spoke of issues collateral to the "trial." What is most instructive and significant, however, is the distinction that *Gill* drew between prejudicial error committed at trial and subsidiary procedures. There are proceedings other than criminal trials at which prejudicial error can occur and on which subsidiary procedures can impinge. Post conviction proceedings are an example and the facts of the case *sub judice* are illustrative.[11]

Whether the co-conspirator exception applies to the Smith hearsay statement to render it admissible is not at all subsidiary to the post conviction proceedings or collateral to the issue being litigated; namely whether the petitioner's counsel

---

11. Although this court, in *Gill* and its progeny, addressed the propriety of a limited remand within the context of an initial trial and direct appeal from that trial, there is nothing in the language of 8–604(d) that leads me to believe that the discretion to order a limited remand and the attendant limitation on that discretion is confined only to that context. To be sure, the language of the provision states that a court may remand a matter "[i]f the court concludes that the substantial merits of a case will not be determined by affirming, reversing, or modifying the judgment", (emphasis added). All other references to the integral matters within the provision are likewise presented in terms of the propriety to remand a "case" and at no time does the rule use language indicating that it is applicable only to a "trial". A post conviction proceeding most certainly qualifies as a "case" for the purpose of deciding the merits of the underlying substantive issue; namely, in this case, whether or not counsel was ineffective and although the entire "case" in post conviction proceedings is collateral to a trial, that fact does not make the post conviction "case" collateral to itself.

was ineffective. Rather, that determination is directly and critically related to the issue of ineffective counsel. In fact, the outcome of that issue is dispositive as to whether the trial counsel acted in a manner that amounted to ineffective assistance. An erroneous ruling on this issue, which is integral to the post conviction allegations, certainly would be prejudicial.

In this case there is no allegation that the trial or the appellate courts in the original matter made any prejudicially erroneous ruling. In fact, the argument at issue in this case and for the consideration of which the Court of Special Appeals ordered remand was never raised by the State nor considered by the trial court or the appellate court on review. Thus, the purpose of the remand is not to correct an erroneous ruling; rather it is for the purpose of permitting a determination of whether, even though the issue was never raised or argued during the original trial or appeal, an erroneous ruling might have been committed. In light of my assertion that the State's proposed co-conspirator exception argument would be integral to the outcome of the post conviction proceedings, and considering my stance that an erroneous ruling on the newly posited argument would certainly prejudice the petitioner, it is clear the Court of Special Appeals erred in ordering a limited remand. Moreover, I believe that when it first considered the issue, the intermediate appellate court properly and accurately analyzed the effect of excusing the State's failure to preserve the co-conspirator exception argument:

"In our view, the logical extension of the State's position is that there are no time constraints that apply with respect to a claim by the State that defense counsel was not constitutionally ineffective. If the State is permitted to raise a new but valid argument for the first time in its reply brief, or in a motion to reconsider after an appellate ruling is issued, then it could also raise an argument for the first time long after the Court has ruled. Moreover, applying the State's reasoning, it would be incumbent upon the Court to consider the possible universe of reasons justifying a lawyer's strategy or course of action, even if the State never raises such a

point. In the extreme, the State's position means that its failure to justify defense counsel's representation is virtually irrelevant, because it is incumbent on the appellate court to determine whether there is any basis to sustain the representation afforded by defense counsel."

*State v. Jones, supra,* 138 Md.App. at 234, 771 A.2d at 440.

As indicated, the Court of Special Appeals recognized and intended that, on remand, additional evidence could be presented, as well as additional argument. As we have also discussed, the purpose of the remand in this case was not to correct a procedural error, but to allow the State to present an argument that it failed to present timely to the post conviction court. That is precisely what we held, in *Southern,* to be inappropriate. The intermediate appellate court in this case, as it did in *Southern,* went astray "when it attempted to afford the State the opportunity to relitigate, in the same case, an issue it had failed to litigate and prove." *Id.* at 110, 807 A.2d at 23.[12]

The Court of Special Appeals also abused its discretion when it elected, pursuant to Rule 8–131(a),[13] to consider the

---

12. Even it the majority was correct, and remand was appropriate and not an abuse of discretion, the appropriate remand would not be a limited one. At best, consistent with *Gill,* the appropriate remand would be fore a new post conviction hearing.

13. The majority expands the scope of Rule 8–131(a) to include within the ambit of "decide," excusing a waiver or procedural default. 379 Md. 704, 712, 843 A.2d 778, 783 (2004). I am not at all sure that that is appropriate. The Rule does not mention waiver or procedural default and, in fact, speaks in terms of "deciding," *i.e.* [o]rdinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the Court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." The cases on which the majority relies do not support such an expanded meaning of "decide." In *Brice v. State,* 254 Md. 655, 661–62, 255 A.2d 28, 31 (1969), the Court actually decided the issue allegedly not presented at trial; on the record presented. In *Basoff v. State,* 208 Md. 643, 650, 119 A.2d 917, 921 (1956), the defendant failed to object at trial to the admissibility of the testimony of a State's witness, prompting the Court, in rejecting the argument, to comment

State's co-conspirator statement argument despite the State's failure to preserve it for the court's review, having failed to raise that argument either during the post conviction proceedings or in its initial appellate brief. First, it is clear, as the majority acknowledges, that the usual rule is that the appellate court will not consider arguments raised for the first time on appeal or, perhaps in the case of applications for leave to appeal, for the first time in the reply brief. Implicit in such a rule is that refusal to consider new arguments on appeal is the more desirable, consistent and fair course of action. To overcome this usual or generally preferred rule, to deviate from the usual practice, the circumstances must be such to " 'ensure fairness for all parties [or] promote the orderly administration of law.' " *State v. Bell*, 334 Md. 178, 189, 638 A.2d 107, 113 (1994) (citations omitted).

In *Bell*, the defendant was tried and convicted in the Circuit Court for Baltimore City on narcotics charges. The evidence on which the conviction was based consisted of drugs in a vial, which the police observed in plain view, and drugs in a gym bag discovered after, the State argued and trial court held, consistent with the State's argument, the police conducted an inventory search. On appeal, in its initial brief, the State

---

"Appellant made no objection at the trial of the case to the policewoman's testimony as to Mrs. Thomas' statements. Therefore, we cannot consider the objection here. One of our rules respecting appeals provides: 'In no case shall the Court of Appeals decide any point or question which does not plainly appear by the record to have been tried and decided by the Court below.' " Rules of the Court of Appeals, rule 9.

"This rule applies to both civil and criminal cases. When a party has the option either to object or not to object, his failure to exercise the option while it is still within the power of the trial court to correct the error is regarded as a waiver of it estopping him from obtaining a review of the point or question on appeal. The Court of Appeals adopted the rule to ensure fairness for all parties to cases and to promote the orderly administration of the law."

Citing *Courtney v. State*, 187 Md. 1, 48 A.2d 430 (1946); *Davis v. State*, 189 Md. 269, 55 A.2d 702 (1947); *Banks v. State*, 203 Md. 488, 495, 102 A.2d 267 (1954). In *Banks*, the Court also referred to the predecessor of Rule 8–131, but only to explain why, given the defendant's failure to object to proceeding with trial in the absence of a stenographer, it would not address the substance of the issue.

added an additional argument that the second search was appropriate under the *Carroll* doctrine.[14] The Court of Special Appeals reversed the judgment of the Circuit Court, holding that the second search was not a valid inventory search. It declined to consider the State's *Carroll* argument because it had not been raised during trial.

In this Court, the State argued, relying on *Robeson v. State*, 285 Md. 498, 502, 403 A.2d 1221, 1223 (1979), *cert. denied*, 444 U.S. 1021, 100 S.Ct. 680, 62 L.Ed.2d 654 (1980), that the intermediate appellate court erred by refusing to consider the *Carroll* argument, reasoning that an appellate court may affirm a trial court on "grounds that had not been relied upon by either, the trial court or the parties." *Bell*, 334 Md. at 187, 638 A.2d at 112. Affirming the Court of Special Appeals, we first noted that the decision to consider grounds not raised at trial is discretionary, not mandatory. *Id.* at 188–89, 638 A.2d at 113. Further, we explained, "this discretion should be exercised only when it is clear that it will not work an unfair prejudice to the parties or to the court." *Id.* at 189, 638 A.2d at 113. Moreover, we expounded:

"A criminal defendant could suffer unfair prejudice, if, for example, the defendant's response to a new argument posited by the State on appeal depends on evidence which was not offered in the trial court. In this regard, we are persuaded by the reasoning of the Supreme Court when it declined to consider an alternative justification for an arrest that was raised for the first time on appeal:

"We do not think that these belated contentions are open to the government in this Court and accordingly we have no occasion to consider their soundness. To permit the Government to inject its new theory into the case at this

---

**14.** In *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), the Supreme Court announced a vehicle exception to the warrant requirement, which allowed police to search an automobile without a warrant if there was probable cause to believe that the automobile contained illegal goods and there was an attendant exigency, so long as the search was terminated once the police uncovered the stolen goods.

stage would unfairly deprive petitioner of an adequate opportunity to respond. This is so because in the District Court, petitioner, being entitled to assume that the warrant constituted the only purported justification for the arrest, had no reason to cross-examine Finley or adduce evidence of his own to rebut the contentions that the Government makes here for the first time.' "

*Id.* 334 Md. at 190, 638 A.2d at 113–14, quoting *Giordenello v. United States,* 357 U.S. 480, 488, 78 S.Ct. 1245, 1251, 2 L.Ed.2d 1503, 1510–11 (1958). *See also, Crown Oil and Wax Co. of Delaware v. Glen Construction Co. of VA.,* 320 Md. 546, 561, 578 A.2d 1184, 1191 (1990) (holding that the court could properly consider a new theory upon appeal pursuant to its discretion under Rule 8–131 even when the issue was raised for the first time in the petitioner's appellate brief because, although a new issue, it only constituted an additional argument that the Court could adequately decide based upon the facts before the court); *Gindes v. Khan,* 346 Md. 143, 151, 695 A.2d 163, 167 (1997) (declining to exercise discretion to direct entry of final judgment where the issue sought to be presented was not in the case and, with regard to Rule 8–131, "[t]he factual record in this case is quite confused"); *Taub v. State,* 296 Md. 439, 441–42, 463 A.2d 819, 820 (1983) (deciding the dispositive issue, one of statutory construction, although not raised or decided in the trial court); *United States v. Ordonez,* 737 F.2d 793, 801 (9th Cir.1983) (holding "[w]e decline to speculate on the state of this record that the trial court would have been satisfied that sufficient foundational facts were presented to satisfy the co-conspirator exception, if the prosecutor had argued this theory in a timely manner. For us to sustain a theory of admissibility not presented below, would unfairly rob appellants of the opportunity to argue the weight, sufficiency and trustworthiness of the evidence to establish a proper foundation before the trial judge, or to offer proof to controvert the facts now relied upon by the government.")

*Bell* and the other cases cited are instructive as to when an appellate court, pursuant to Rule 8–131, may consider, and decide, an issue not presented to the trial court; they differen-

tiate the situation in which the record is sufficient to allow the appellate court to decide the issue and the situation where the record is insufficient. As in *Bell*, in this case, because the State failed to raise, during the post conviction proceedings, the argument that Smith's statement was admissible under the co-conspirator exception to the hearsay rule, the petitioner was never given a chance to counter that argument at that level. As a result, the record was never developed with regard to that argument; consequently, the Court of Special Appeals was unable to exercise its discretion to "decide" that issue and it would not have been fair, in any event, because the defendant was never afforded the opportunity to meet this "new argument." *Crown Oil and Wax Co. of Delaware v. Glen Construction Co. of VA., supra,* 320 Md. 546 at 561, 578 A.2d 1184 at 1191 (1990). All the intermediate appellate court could have done was to forgive the State's waiver of the co-conspirator argument and, in so doing give the State a second opportunity to prevail in the post conviction arena on the appellate level.

Having excused the waiver of the unpreserved issue, as to which the record was insufficient to permit a decision on the merits, the Court of Special Appeals had no choice but to order a limited remand pursuant to Rule 8–604. But a limited remand, it is well settled, is appropriate only when the issue to be decided is one collateral to the case before the trial court. For all intents and purposes, as the only remaining forum, the "trial" before the lower court in this matter, was the post-conviction hearing. Whether the statement is admissible under the co-conspirator exception to hearsay rule is not collateral to the post conviction case, it is integral, if not critical, to it. Certainly, the Court of Special Appeals believed that to be the case, why else would it remand the issue to the post conviction court for the limited purpose of determining its admissibility.

The majority proposes a two part test for determining whether a plausible exercise of discretion under Rule 8–131(a) is appropriate: "the appellate court should consider whether the exercise of its discretion will work unfair prejudice to

either the parties or the trial court," 379 Md. at 714, 843 A.2d at 784 and "the appellate court should consider whether the exercise of its discretion will promote the orderly administration of justice." *Id.* at 715, 843 A.2d at 784. It gives short shrift to the former, stating simply: "We find little if any prejudice generated against either petitioner or the post-conviction court by the Court of Special Appeals' exercise of discretion in this matter." *Id.* at 715, 843 A.2d at 785. On the other hand, it finds that "the second policy goal of Rule 8–131(a), orderly and efficient judicial administration, strongly favors the outcome determined by the intermediate appellate court." *Id.* at 715, 843 A.2d at 785. In support, the majority posits:

> "[I]t is helpful to imagine hypothetically what would happen if the Court of Special Appeals had *not* exercised its discretion and had only affirmed the post-conviction court. In that case Jones would receive a new trial, in which the State surely would submit Smith's written statement, upon which Jones' new trial counsel, this time, would just as surely object to Gutrick's hearsay statement within Smith's written statement. Now, the State would respond with the co-conspirator exception argument that was foreclosed to it by the post-conviction proceedings, and the trial court would decide this matter of law.... The absurdity of this is made even more clear when it is understood that depriving the post-conviction court from determining this purely legal issue could result in the hearsay statement reaching the jury in precisely the same manner as in Jones' original trial—*nothing* will have changed."

*Id.* at 716, 843 A.2d at 785.

To the majority, expediency demands that the Court of Special Appeals' decision to remand this case to the Circuit Court for a limited purpose be upheld, notwithstanding the State's patent failure to abide by the procedural rules of the court. An important factor for the majority is the fact that the issue the State neglected to raise in the post conviction proceedings or in its initial appellate brief would be admissible even if the remand were a general one for a new trial. It is

better to ensure that procedural integrity is reserved than that we send the message that, in post conviction cases, the State need not concern itself with compliance with the procedural rules, and that it will be able, at any time, even when the appellate process is complete, to correct even egregious procedural defaults, as in this case, simply by invoking judicial economy. It bears repeating that

"the logical extension of the State's position is that there are no time constraints that apply with respect to a claim by the State that defense counsel was not constitutionally ineffective. If the State is permitted to raise a new but valid argument for the first time in its reply brief, or in a motion to reconsider after an appellate ruling is issued, then it could also raise an argument for the first time long after the Court has ruled. Moreover, applying the State's reasoning, it would be incumbent upon the Court to consider the possible universe of reasons justifying a lawyer's strategy or course of action, even if the State never raises such a point. In the extreme, the State's position means that its failure to justify defense counsel's representation is virtually irrelevant, because it is incumbent on the appellate court to determine whether there is any basis to sustain the representation afforded by defense counsel."

*State v. Jones, supra,* 138 Md.App. at 234, 771 A.2d at 440. If the majority is correct, not only the Court of Special Appeal's initial, very accurate analysis of the effect of excusing the State's failure to preserve the co-conspirator argument, but also our characterization of this Court's rules of procedure as—"precise rubrics" to be followed—is just so much rhetoric.

The majority also fails to consider that orderly administration of justice is not limited to ensuring that we save time and expense or to ensuring that we accelerate the termination of litigation. To be sure, the Maryland Rules of Procedure also were enacted to ensure the orderly and equitable administration of justice. *See* Md. Rule 1–201, which reads, in relevant part: "These rules shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay." *See also Brown v. Fraley,* 222

Md. 480, 483, 161 A.2d 128, 130 (1960) (explaining that "[t]he Rules are established to promote the orderly and efficient administration of justice and are to be read and followed."); *Stewart v. State,* 334 Md. 213, 216, 638 A.2d 754, 755 (1994) (holding that "the Maryland Rules of Procedure are not guides to the practice of law but precise rubrics 'established to promote the orderly and efficient administration of justice and [that they] are to be read and followed.' ") (citation omitted).

I submit that, in terms of judicial economy, when pondering the propriety of the exercise of its discretion to consider new arguments on appeal, the appellate court must consider whether the failure to consider the issue would result in a waste in judicial resources, and whether, as the majority acknowledges, but refuses substantively to address, the failure of the party submitting the additional argument prior to appeal so egregiously violates the procedural rules that it compromises the simplicity of procedure and fairness in administration.

The law in Maryland is clear, when a post-conviction defendant could have, but failed to assert an allegation of error at a prior proceeding, the allegation is deemed to have been waived and he or she may not raise it on appeal. *See* Md.Code, (2001) § 7–106 of the Criminal Procedure Article.[15] The cases are

---

**15.** As relevant, Maryland Code, (2001) § 7–106 of the Criminal Procedure Article provides:

"(b) Waiver of allegation of error.—

"(1) (i) Except as provided in subparagraph (ii) of this paragraph, an allegation of error is waived when a petitioner could have made but intelligently and knowingly failed to make the allegation:

"1.   before trial;

"2.   at trial;

"3.   on direct appeal, whether or not the petitioner took an appeal;

"4.   In an application for leave to appeal a conviction based on a guilty plea;

"5.   in a habeas corpus or coram nobis proceeding began by the petitioner;

"6.   in a prior petition under this subtitle;  or

"7.   in any other proceeding that the petitioner began.

"(ii) 1.   Failure to make an allegation of error shall be excused if special circumstances exist.

legion in which an appellate court has refused to entertain a defendant's argument when he or she has failed to raise the issue at a prior hearing. *See Oken v. State*, 343 Md. 256, 681 A.2d 30 (1996), *Hunt v. State*, 345 Md. 122, 142, 691 A.2d 1255, 1265 (1997), *Ware v. State*, 360 Md. 650, 692, 759 A.2d 764, 786 (2000), *Conyers v. State*, 354 Md. 132, 148, 729 A.2d 910, 918 (1999), *Walker v. State*, 338 Md. 253, 262, 658 A.2d 239, 243 (1995). Furthermore, a defendant who fails to raise an argument regarding ineffective assistance of counsel at trial, bears the burden of proving special circumstances to justify why he or she did not raise the issue at a prior proceeding.

As the Court of Special Appeals acknowledged, there is no reason not to hold the State to the same standard and determine that when the State fails to raise an issue before the post-conviction court, it may not properly raise the issue on appeal absent a showing of special circumstances. *Jones*, 138 Md.App. 178, 228–29, 771 A.2d 407, 437 (2001).

*Oken* is particularly instructive. In that case, Oken was convicted of murder. 343 Md. at 263, 681 A.2d at 33. At his trial, he requested that voir dire include certain "reverse-*Witherspoon* " questions that he proposed, to identify prospective jurors who "harbored 'any convictions in support of the death penalty' in violation of *Morgan v. Illinois*, 504 U.S. 719, 726, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), and *Evans v. State*, 333 Md. 660, 637 A.2d 117, *cert. denied*, 513 U.S. 833, 115 S.Ct. 109, 130 L.Ed.2d 56 (1994)." *Id.* at 268–69, 681 A.2d at 36. The court refused to ask the questions he requested, but Oken did not raise the issue on direct appeal. He subsequently filed a petition for postconviction relief, in which one of the issues was the trial court's refusal to voir dire the venire as to "reverse *Witherspoon.*" He also raised the issue

"2. The petitioner has the burden of proving that special circumstances exist.
"(2) When a petitioner could have made an allegation of error at a proceeding set forth in paragraph (1)(i) of this subsection but did not make an allegation of error, there is a rebuttable presumption that the petitioner intelligently and knowingly failed to make that allegation."

in his initial brief before this Court.[16]  *Id.* at 269, 681 A.2d at 36.  In response to the State's argument that the petitioner waived his right to raise the "reverse-*Witherspoon*" voir dire argument on post-conviction or on appeal from the post-conviction court because he didn't raise the issue on direct appeal, the petitioner argued that there were special circumstances—his appellate counsel did not have adequate time, after *Morgan* was decided, to become familiar with the "reverse-*Witherspoon*" requirements that existed at the time of the petitioner's trial, *id.* at 273–74, 681 A.2d at 38–39—that excused the waiver.

This Court held that *Oken* had waived his right to assert the issue.  In so holding, we noted that, notwithstanding the *Morgan* decision, there was ample precedent defining a defendant's right "during voir dire [to] identify prospective jurors who harbored disqualifying biases in favor of the death penalty."  *Id.* 343 Md. at 273–74, 681 A.2d at 38.  Given that precedent, this Court stated, the petitioner offered no special circumstances that would obviate his responsibility to raise the issue on appeal.  Accordingly, we refused to exercise our discretion under Rule 8–131 to excuse the waiver.[17]  *Id. See*

---

**16.**  In his petition for post conviction relief, Oken alleged that the trial court erred when it failed to ask questions that satisfactorily identified those prospective jurors who harbored a predisposition toward the death penalty and that his trial counsel and appellate counsel were ineffective for failing to raise the "reverse-*Witherspoon*" objection at the trial and on direct appeal respectively.  After the post-conviction court found that the trial judge asked sufficient questions of the jurors, Oken appealed to this court, and in its initial brief alleged only trial court error as it pertained to the reverse-*Witherspoon* question.  In other words, the petitioner dropped the claims of ineffective assistance of counsel as it pertained to their alleged failure to object during voir dire or assert the argument on direct appeal.

**17.**  I acknowledge that in *Oken,* this Court also decided that, even if the petitioner had not waived the right to assert the voir dire argument, we would have found no error.  Interestingly, because the issue was raised before the trial court and before the post-conviction court, this court had a sufficient record upon which to rely to address the substantive issue.  In this case, as indicated, the record was not developed on the issue of co-conspiratorship as to permit the intermediate appellate court to have decided the issue.  The State's waiver and its failure to

*also Bell, supra,* 334 Md. at 191, 638 A.2d at 114 (holding that "[t]he State may not lead the defendant and the trial court down a primrose path, only to leave them stranded when, on appeal, the State deems it advantageous to change its strategy"). *See also, Giordenello v. United States,* 357 U.S. 480, 488, 78 S.Ct. 1245, 1251, 2 L.Ed.2d 1503, 1510–11 (1958) ("[W]e [do not] think that it would be sound judicial administration to send the case back to the District Court for a special hearing on the issue of probable cause which would determine whether the verdict of guilty and the judgment already entered should be allowed to stand. The facts on which the Government now relies to uphold the arrest were fully known to it at the time of trial and there are no special circumstances suggesting such an exceptional course").

In addition to the long-standing law and precedent regarding waiver in collateral review, this Court has also consistently held that an appellate court will not address an argument that the appellant first raises in the reply brief. *Health Svcs. Cost Review Comm'n v. Lutheran Hosp.,* 298 Md. 651, 664, 472 A.2d 55, 61 (1984). *Logan v. Town of Somerset,* 271 Md. 42, 67, 314 A.2d 436, 449–50 (1974), *Harmon v. State Roads Commission,* 242 Md. 24, 30–32, 217 A.2d 513, 516–17 (1966).

Under our precedents, *see Basoff v. State,* 208 Md. 643, 650, 119 A.2d 917, 921 (1956); *Banks v. State,* 203 Md. 488, 495, 102 A.2d 267 (1954),[18] there is no dispute that the State waived the argument that Smith's statement was admissible as the statement of a co-conspirator in the furtherance of a conspiracy when it failed to raise the issue before the post conviction court. In most cases, the failure of a defendant to raise a

---

establish a sufficient record upon which the appellate court could rely in exercising its discretion to consider the new issue constitute procedural fault sufficient to render the Court of Special Appeal's exercise of discretion to consider the new argument an abuse of discretion.

**18.** Both *Basoff* and *Banks* involved defendants who failed to raise issues in the trial court. By parity of reasoning, when the defendant, in post conviction proceedings raise issues, which the State does not controvert, although it could have done so, the issue not controverted must be deemed waived.

claim at post-conviction hearing alone, results in the refusal of the appellate court to consider that claim on appeal. This is because, when a defendant could have, but fails to raise an argument, the presumption arises that the failure to raise the argument was a tactical decision.

The majority maintains, however that the failure to raise the co-conspirator argument was inadvertent and that, in any event, the State "never wavered from its position that the statement was admissible in its entirety, and that therefore, Jones was afforded effective assistance of counsel." 379 Md. at 717, 843 A.2d at 785. That one does not waver in making an argument on a particular ground does not preserve another ground on which that argument could have been based; persistence, if for the wrong reason, will not, and, in truth, should not, carry the day.

Further, the majority holds that "[t]he State did not make a tactical decision to forgo, waive, or concede the argument that the statement was admissible under the co-conspirator argument . . ." *Id.* at 717, 843 A.2d at 785–86. But that is merely a conclusion; we are not provided with any basis for why the majority so concludes. The State most assuredly knew the requirements of the Maryland Rules as they pertain to objections at trial and the law as it pertains to waiver in post-conviction proceedings. If, as the majority posits, the State simply overlooked a viable argument, despite that argument's availability to the State on post-conviction, we certainly should not reward the State's ineffectiveness by allowing it to circumvent the rules. This is particularly so in light of our almost absolute denial of the same opportunity to criminal defendants.

Moreover, and even more telling, the State only raised the issue of co-conspirator admissibility once, in the application for leave to appeal, when it sought to challenge the post conviction court's decision. The State never argued, or even raised, that issue at the post conviction trial and it failed to include it as an argument in its initial brief in the Court of Special Appeals. That smacks, far from inadvertence, of a tactical decision.

The majority, in overlooking its consistent procedural errors, would allow the State to raise issues on appeal from the grant of post-conviction relief that it never raised before the post-conviction court and that it never properly raised on appeal, despite its consistent refusal to afford the same opportunity to criminal post-conviction defendants. In effect, it allows the State, for tactical reasons and secure in the knowledge that it will be considered, notwithstanding multiple procedural defaults, to refrain from presenting some of its arguments, perhaps the dispositive one, until, as a last resort, it must do so, so long as an argument can be made that the interests of judicial economy are satisfied. If judicial economy is the overriding interest, however, one wonders why we have procedural rules applicable to collateral review at all. This case suggests an answer: to hold criminal defendants to procedural requirements to which the State, which is allowed to assert new claims as, and when, it chooses to do so, need not adhere.

I believe that the majority, in affirming the intermediate appellate court has announced a rule that treats the State and criminal defendants guilty of the same procedural default quite differently, with the State being treated much better. In light of its failure to preserve the co-conspirator issue for review during the post-conviction proceedings or even to raise the issue on appeal in a timely fashion, the State should not be allowed another opportunity to present evidence on the point. I repeat, this Court consistently has denied that opportunity to defendants on appeal from post-conviction proceedings.

In addition to ensuring that we dispose of cases in the most expedient fashion possible, the overriding goal of Rule 8–131(a) is to ensure that neither party is unfairly prejudiced. I would hold that the decision of the Court of Special Appeals to exercise discretion, under Rule 8–131(a), to consider the State's unpreserved argument is an abuse of its discretion.

I dissent.

Judge CATHELL joins in the views herein expressed.